UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARGARET HARTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:07cv17 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since July 30, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq).

3. The claimant has the following severe impairments: emphysema, bladder incontinence, degenerative disc disease and diabetes (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work reduced by the following limitations and restrictions: avoid even moderate exposure to dust, fumes, odors, gases and poor ventilation, extreme cold, extreme heat and wetness.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 24, 1956 and was 47 years old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR-82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social

> Security Act from July 30, 2003 through December 31, 2003, the date the claimant was last insured for benefits under Title II of the Social Security Act (20 CFR 404.1520(g)).

(Tr. 14-19).

Based upon these findings, the ALJ determined that the plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

The plaintiff filed her opening brief on May 21, 2007.  On June 25, 2007, the defendant filed a memorandum in support of the Commissioner's decision. The plaintiff has not filed a reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative

inquiry.

      The plaintiff filed her DIB and SSI applications in October 2003, alleging disability as of July 2003, due to emphysema, high blood pressure, and diabetes. After her applications were denied initially and on reconsideration, she requested a hearing. On October 6, 2005, the plaintiff, represented by counsel, appeared and testified before ALJ John S. Pope. On September 27, 2006, the ALJ found that the plaintiff was not disabled because she could perform a significant number of limited sedentary-level jobs despite her impairments. The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. The plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

      The plaintiff was 47 years old on December 31, 2003 when her insured status for disability insurance benefits ended (Tr. 17, 54, 155). She has a limited education (Tr. 64). Prior to July 2003 she performed a variety of light- to medium-level jobs (Tr. 59).

      The plaintiff said she experienced difficulty breathing, which would interfere with her ability to work (Tr. 162). Despite her claims of breathing difficulties, during the relevant period the plaintiff smoked one and one-half packs of cigarettes per day (Tr. 106). The plaintiff also complained of constant stabbing pain beginning above her hip and radiating to her ankle (Tr. 162-63, 171-72). The plaintiff said her pain was relieved by lying down and applying heat (Tr. 172). She said she could lift a gallon of milk, walk one and one-half out of eight hours, stand for two and one-half hours, and sit for up to twenty minutes per hour (Tr. 173). The plaintiff's doctors had not recommended that she limit her activities in any way (Tr. 165). To the contrary, they recommended that she exercise, although she needed to be careful not to aggravate her back pain (id.). The plaintiff estimated that during an eight-hour period she would go to the bathroom

approximately every hour, and she said she awoke two to three times during the night to use the bathroom (Tr. 163, 177). She described taking a daily two- to four-hour nap (Tr. 167). She did not allege any side effects from medications other than a dry mouth (Tr. 166).

The plaintiff cares for her personal needs, drives, and performs light household chores, although her husband performed more exertionally demanding chores such as shopping or vacuuming (Tr.70-71, 74-75, 158, 166-69). She crochets for enjoyment, and said she would not have any difficulty operating hand or foot controls (Tr. 173-74, 179). She said she was depressed, for which her general practitioner prescribed medication (Prozac), which helped (Tr. 169-70).

Dr. Kooistra examined the plaintiff in September 2003, at which time she complained of back and right hip pain radiating into her right leg (Tr. 97). One week later the plaintiff reported that she was feeling better and was able to walk (Tr. 96). The plaintiff demonstrated good lumbar ranges of motion, negative straight leg raising, and walked with a normal gait. Dr. Kooistra opined that the plaintiff's back pain and sciatica had improved (id.). Two weeks later, Dr. Kooistra noted that the plaintiff had indicated that she was going to try to obtain disability benefits (Tr. 95).

In November 2003, Dr. Westrick reported that he performed an eye examination on the plaintiff, and was able to correct her vision to 20/20 (Tr. 101). The plaintiff had no visual impairment related to her diabetes (id.). Dr. Girod performed a consultative examination of the plaintiff in December 2003 (Tr. 106-08). The plaintiff did not appear to exhibit fatigue during the examination. She exhibited normal gait and station, and normal ranges of motion. The plaintiff's lungs were clear, with normal inspiratory and expiratory phases, and no crackles,

wheezes, or rhonchi. Muscle strength, reflexes, and fine and gross manipulation were normal. Dr. Girod concluded that the plaintiff was able to sit and handle objects, and could stand for two out of eight hours, but could not walk for more than two blocks due to her claims of shortness of breath (id.).

The plaintiff's insured status for disability insurance benefits purposes expired on December 31, 2003. Thereafter, beginning in 2004, Dr. Kooistra's records show increased complaints of back and right leg pain (Tr. 131). In January 2004, the plaintiff reported having "no problems" with either her bladder or her bowels (Tr. 130). In February 2004, an MRI revealed mild degenerative changes (Tr. 142). After the February 2004 MRI, the record does not document that Plaintiff sought or received medical treatment for any complaints for more than ten months until January 2005, when she complained of an exacerbation of back pain after she twisted her back while walking (Tr. 129).

State agency physicians Dr. Klion and Dr. Sands reviewed the evidence of record in January 2004 and concluded that the plaintiff's condition did not meet or equal a listed impairment (Tr. 110,112).

The ALJ asked Dr. Barkhaus, the vocational expert at the plaintiff's administrative hearing, whether jobs existed that the plaintiff could perform if she were capable of sedentary-level work that did not involve even moderate exposure to dust, fumes, odors, gases, poor ventilation, temperature extremes, or extreme wetness (Tr. 185). Dr. Barkhaus testified that such an individual could perform significant numbers of sedentary-level jobs in the regional economy, including work as an addresser, document preparer, or telephone clerk (Tr. 185-86).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The agency has promulgated regulations that set forth a five-step sequential process for analyzing disability claims.  20 C.F.R. §§ 404.1520, 416.920.  A claimant has the joint burdens of production and persuasion through at least step four, where the individual's residual functional capacity (RFC) is determined.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945.  At step five the Commissioner bears the burden of proving that there are jobs in the national economy that the plaintiff can perform.  Herron v. Shalala, 19 F.3d 329, 333 n.18 (7th Cir. 1994).  In the present case, the ALJ found that there are sufficient jobs in the national economy that the plaintiff is physically capable of performing.

The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be conclusive."  "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)."  Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted).  This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

In his decision, the ALJ found that the plaintiff had not engaged in substantial gainful

8

activity between her alleged onset date and her date last insured.  At step two, the ALJ determined that the plaintiff had severe impairments, but found, at step three, that she did not have an impairment or combination of impairments that met or equaled any impairment in the Listing of Impairments.  At step four, the ALJ determined that the plaintiff was unable to perform any of her past relevant work.  At step five, the ALJ found that there are jobs that exist in significant numbers in the regional economy that the plaintiff can perform.

In support of her request for reversal or remand of the ALJ's decision, the plaintiff first argues that the ALJ erred by not finding her disabled at the third step of the sequential process for evaluating claims for Social Security disability benefits because her condition met Listing 3.02A.  The plaintiff bears the burden of proving she met or equaled a listed impairment. Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999). The record shows that the ALJ expressly considered the plaintiff's condition within the context of Listing 3.02 (Tr. 15). The results of pulmonary function studies documented in the record are "suboptimal," due to Plaintiff's "coughing throughout [the] test" (Tr. 102, 110).

The plaintiff states that Listing 3.02A required her to have an $FEV_1$ of equal to or less than 1.15.  The record shows that her pre-med $FEV_1$ as 1.25, and her post-med $FEV_1$ was .90. As her pre-med $FEV_1$ was not equal to or less than 1.15, the ALJ was correct to find that she did not meet the Listing.

Moreover, no doctor opined that Plaintiff met or equaled a listed impairment. To the contrary, the only doctors to express an opinion on the subject concluded that she did not meet or equal a listed impairment (Tr. 110, 112). Clearly,  it was reasonable for the ALJ to afford considerable weight to these uncontradicted expert opinions issued by these doctors designated

9

by the Commissioner. Scott v. Sullivan, 898 F.2d 519, 524 (7th Cir. 1990). Substantial evidence supports his conclusion that the plaintiff did not meet or equal that or any other listed impairment.

The plaintiff next contends that her urinary frequency, back problems, and fatigue are "inconsistent with competitive employment". As the defendant points out, the record fails to document that these conditions prevented the plaintiff from performing sedentary-level work on a sustained basis prior to December 31, 2003. In support of her alleged urinary frequency, the plaintiff relies solely upon her subjective testimony, and states that such urinary frequency is common among diabetics and persons on her medication. However, the record does not document that the plaintiff consistently complained to her doctors of significant urinary difficulties. No doctor described her as needing to take unusually frequent or long bathroom breaks. The ALJ observed that the plaintiff was prescribed medication in response to her complaints of bladder difficulties, after which she reported no problems with her bladder (Tr. 16, 130). Therefore, it was reasonable for the ALJ to conclude that the record did not establish that the plaintiff needed to take bathroom breaks of a frequency or duration that would prevent her from performing substantial gainful activity.

In support of her claim of back problems, Plaintiff cites the fact that she has been prescribed "powerful pain medication" and that clinical findings are consistent with her complaints, and that her past work is "the kind of work that would exacerbate or cause degenerative disc disease." However, the mere diagnosis of the plaintiff as experiencing a medically identifiable impairment is not sufficient to establish disability. The plaintiff has been prescribed medication, but neither surgery nor any other aggressive treatment has been

recommended. She has not participated in physical therapy, and her back condition has not required any emergency room visits or in-patient hospitalizations. In fact, the plaintiff sought no treatment of any kind for more than ten months between February 2004 and January 2005. It is clear that the ALJ reasonably considered appropriate factors including the plaintiff's medications, the objective medical evidence, the plaintiff's work history, her treatment history, and other factors in finding her subjective allegations of disabling back pain not fully credible.

In arguing that she experiences work-preclusive fatigue, the plaintiff states that her diagnosed conditions may contribute to decreased energy levels and fatigue, and that her medications have the potential side effect of drowsiness.  She also states that her bladder difficulties interrupt her sleep, and described taking daily two- to four-hour naps.  However, the record contains not a single mention of the plaintiff complaining to her doctors of fatigue during the relevant period.  As the record does not support the plaintiff's complaints of fatigue, the ALJ was correct to find that her complaints of fatigue were not disabling.  Accordingly, the decision of the ALJ will be affirmed.

## Conclusion

Based on the foregoing, the ALJ's decision is hereby AFFIRMED.

Entered: September 10, 2007.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court

11